UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

THEODORE COLUMBUS BROCKMAN,

          Plaintiff,

v.

DRAKE BOBAY et al.,

          Defendants.

_____/

Case No. 1:25-cv-179

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's action for failure to state a claim.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LCF correctional staff: Prisoner Counselors Drake Bobay and N. Ader; and Coordinator Prisoner Counselor Chad Poynter.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In Plaintiff's complaint, he alleges that on April 23, 2024, non-party Sergeant Cook "entered C-Rec and asked Plaintiff for his prison ID card."[2] (Compl., ECF No. 1, PageID.5.) Plaintiff complied by providing his ID card, and non-party Sergeant Cook took Plaintiff's "hobbycraft items from the table and told Plaintiff that rule #5 of the Rec Area states: 'Possession of store items and/or personal items in the Rec area is prohibited.'" (*Id.*) Non-party Sergeant Cook then "informed Plaintiff that he would be receiving a misconduct report, and the items would be returned to him thereafter." (*Id.*)

The next day, April 24, 2024, a non-party officer reviewed Plaintiff on the misconduct report, and at that time, "Plaintiff requested a hearing." (*Id.*) The following day, April 25, 2024, Plaintiff was called to Defendant Bobay's office, and "Plaintiff was allowed to explain his side of the incident." (*Id.*) "Defendant Bobay indicated that he would make a decision on the misconduct report and based on the outcome of the hearing he would determine the disposition of the property that was confiscated." (*Id.*)

On April 26, 2024, Defendant Bobay gave Plaintiff "the hearing results [for] the misconduct," and Plaintiff "noticed an extra charge was added to the misconduct report to include a code 049 for contraband." (*Id.*) Plaintiff states that the relevant MDOC policy, Policy Directive 04.07.112, states that certain items that are determined to be contraband may be sent "home at [the] prisoner's expense or return[ed] to [the] prisoner," and for Plaintiff's items, Defendant Bobay had selected "send home at prisoner's expense." (*Id.*, PageID.5–6.)

On May 2, 2024, Plaintiff "appealed the misconduct finding to the Deputy Warden's office." (*Id.*, PageID.6.) Non-party Assistant Deputy Warden Losinski determined "that a rehearing was warranted." (*Id.*) On May 17, 2024, Plaintiff was re-reviewed on the initial

---

[2] In this opinion, the Court corrects the capitalization in quotations from Plaintiff's complaint.

misconduct charge, and Plaintiff "explained his position" to non-party Assistant Deputy Warden Cline. (*Id.*) Cline removed the "code 049 contraband" charge that had been added to the original charge, concluding that "it did not apply;" the original misconduct conviction for violation of a posted rule remained. (*Id.*)

On June 24, 2024, Plaintiff spoke to non-party Deputy Warden Rurka "about the matter and [Rurka] informed Plaintiff that he had just spoke[n] to [Defendant] Bobay and informed [Bobay] to take the hobbycraft items over to [Defendant] Poynter." (*Id.*) Plaintiff spoke to non-party Sergeant Garrett "about the matter" on July 25, 2024, and Plaintiff asked "why [Defendant] Bobay [wa]s having such an issue with taking the hobbycraft items over to [Defendant] Poynter." (*Id.*) Non-party Sergeant Garrett told Plaintiff that Defendant Bobay "informed her that he did not want anything to do with the hobbycraft items." (*Id.*)

Subsequently, on July 31, 2024, Defendant Poynter "ordered Plaintiff to give up all hobbycraft items and informed Plaintiff that he was being placed on restriction for catching a misconduct in April that was directly related to hobbycraft." (*Id.*) Later that same day, Defendant Poynter "read a Notice of Intent (NOI) to conduct an administrative hearing applying [Policy Directive] 05.03.102(Z), which is the same policy Defendant Bobay included in his findings which [Plaintiff] had appealed and won." (*Id.*) Plaintiff claims that Defendant Poynter "used the same incident which had been reversed on rehearing . . . to charge Plaintiff with violating the same policy, but in a different section of the policy . . . and attaching a second contraband removal slip dated July 31." (*Id.*) "Plaintiff attempted to explain to Defendant Poynter that he did not catch a ticket (misconduct report) directly related to hobbycraft." (*Id.*) In response, Defendant Poynter stated, "Oh! I thought I read in the misconduct it was because of the hobbycra[f]t," and Poynter told Plaintiff to "take it up at the administrative hearing." (*Id.*, PageID.7.)

On August 15, 2024, Defendant Ader conducted the hearing for the NOI, and "Plaintiff explained his side of the circumstances and pointed out that he was being charged with the same violation that [Defendant] Bobay attempted to accuse him of, which was reversed and that charge was removed from the misconduct as being in error." (*Id.*) Plaintiff also "attempted to explain how he was being retaliated against by [Defendant] Poynter]," and that "the property [Poynter] confiscated had nothing to do with the misconduct." (*Id.*) Defendant Ader found Plaintiff guilty and determined that the property at issue would be sent home. (*Id.*) Plaintiff claims that in the written hearing report, Defendant Ader "attempt[ed] to mislead the reader" by stating "see attached copy of misconduct and contraband removal of (4/25/24) for further information." (*Id.*) Plaintiff states that the "contraband removal [Ader] references was substituted for that of the contraband removal [Defendant] Poynter supplied on (7/31/24), not the original one from [non-party] Sgt. Cook on (4/23/24)." (*Id.*)

On September 10, 2024, Plaintiff asked Defendant Ader "to explain how this (60) day restriction, activated under [Policy Directive] 05.03.102(Z), was to be implemented and when does the (60) day time period start." (*Id.*) In response, Defendant Ader told Plaintiff that the 60-day restriction "started the day Plaintiff received a copy of the report after the hearing." (*Id.*) Defendant Ader also "read off what his report stated and Plaintiff mentioned that he was found guilty of the same violation by [Defendant] Bobay which was code 049 posted rule #5[,] a class-three misconduct report of being in possession of personal property." (*Id.*) "Plaintiff also explained that the items taken by Defendant Poynter w[ere] valued at approximately $2000.00, and this was only a minor infraction." (*Id.*) Plaintiff asked for the property to be returned to him, but "Defendant Ader indicated that Plaintiff still had to send it out." (*Id.*) Plaintiff told Defendant Ader that Plaintiff "was being punished twice for the same alleged violation and [Plaintiff] was being

punished three times." (*Id.*) Plaintiff claims that Defendant Ader stated "in a victory type voice" that it "wasn't his concern." (*Id.*, PageID.7–8.)

On October 9, 2024, Defendant Bobay told Plaintiff "that he had to come to [Bobay's] office to mail out the items [Bobay] had in his office, which consisted of (8) necklaces; (6) bracelets, and all the hobbycraft materials/items confiscated by Defendant Poynter." (*Id.*, PageID.8.) "Plaintiff explained that he was only found guilty of code 049 – violation of a posted rule and not code 049 violation of contraband," and Plaintiff asked "why did he have to send the property at issue out." (*Id.*) In response, Defendant Bobay told Plaintiff that non-party Deputy Warden Rurka had informed Bobay "that Plaintiff appealed the administrative hearing and lost his appeal and that [Plaintiff] had to send all [of his] property out." (*Id.*) Defendant Bobay then called Defendant Poynter "on speaker phone so that Plaintiff could hear and asked [Poynter] did he take Plaintiff's hobbycraft card and Poynter said 'yes.'" (*Id.*)

Plaintiff was then "forced to mail out all his hobbycraft property or it would be destroyed." (*Id.*) "During this meeting with [Defendant] Bobay," Bobay stated: "I already know you are going to sue me, but as it stands right now, you have to send the property out or it will be destroyed. I already know you are making spud so you have to do what you have to do." (*Id.*)

Based on the foregoing allegations, Plaintiff brings the following claims against Defendants under 42 U.S.C. § 1983: First Amendment retaliation claims, Eighth Amendment deliberate indifference claims, Fourteenth Amendment due process and equal protection claims, and claims regarding the violation of MDOC policy. (*See id.*, PageID.2, 8–11.) Plaintiff also avers that Defendants engaged in a civil conspiracy in violation of 42 U.S.C. §§ 1983 and 1985. (*See id.*, PageID.1, 8–9, 11.) Additionally, Plaintiff avers that Defendants violated state law. (*See id.*, PageID.1 (referencing alleged violations of Mich. Comp. Laws § 691.1407(2)); *see also id.*,

PageID.10 (referencing "gross negligence").) The Court also construes Plaintiff's complaint to raise a Double Jeopardy Clause claim. (*See id.*, PageID.7 (alleging that Plaintiff "was being punished twice for the same alleged violation and [he] was being punished three times").) Plaintiff seeks a declaratory judgment, injunctive relief, and monetary damages. (*See id.*, PageID.2, 12.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    First Amendment Retaliation Claims

Plaintiff claims that Defendants retaliated against him "for having exercised his rights and [for being] victorious when the bogus misconduct report was reduced to a simple posted rule infraction, which began the retaliatory effects by Defendants." (Compl., ECF No. 1, PageID.4.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) she was engaged in protected conduct; (2) an adverse action was taken against her that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Protected Conduct

Here, Plaintiff alleges that he engaged in "constitutional protected conduct such as a right to appeal a disciplinary finding, or submitting grievances against prison officials for their wrong doings." (Compl., ECF No. 1, PageID.9.) Plaintiff also alleges that during the meeting in which Defendant Bobay told Plaintiff he would have to "mail out all [of] his hobbycraft property," Defendant Bobay stated: "I already know you are going to sue me, but as it stands right now, you have to send the property out or it will be destroyed. . . ." (*Id.*, PageID.8.)

9

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016). Therefore, Plaintiff's filing of grievances constitutes protected conduct.

As to Plaintiff's assertion that his challenge to his original misconduct charge constituted protected conduct, the Court assumes, without deciding, that this challenge constituted protected conduct. *See, e.g.*, *Seibert v. McQuiggin*, No. 2:10-cv-347, 2011 WL 447030, at *4 (W.D. Mich. Feb. 4, 2011) (discussing that allegations regarding a prisoner-plaintiff exercising his right to contest a misconduct charge more closely resembles protected speech and may satisfy the first element of a retaliation claim). *But see, e.g.*, *Taylor v. Fischer*, 841 F. Supp. 2d 734, 737 (W.D.N.Y. 2012) (concluding that "[b]eing found not guilty [of a prison misconduct charge], however, is not protected activity, or for that matter, 'activity' at all, on plaintiff's part"); *Miller v. Lucas*, No. 3:16-cv-01947, 2018 WL 4441534, at *4 (M.D. Pa. July 20, 2018), *report and recommendation adopted*, No. 3:16-cv-1947, 2018 WL 4404675 (M.D. Pa. Sept. 17, 2018) (finding that "[b]eing found not guilty of a misconduct charge is not conduct protected by the First Amendment" (citations omitted)).

Finally, the filing of a civil rights lawsuit also constitutes protected conduct.

### 2.    Adverse Action

Next, to establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002).

10

Here, Plaintiff alleges that he was issued, and ultimately convicted of, a misconduct charge for violation of a posted rule, which stemmed from an April 23, 2024, incident in which Plaintiff improperly had hobbycraft materials in the recreation area. (Compl., ECF No. 1, PageID.5.) Plaintiff alleges that when he received the hearing results for this misconduct charge, "an extra charge was added to the misconduct report to include a code 049 for contraband." (*Id.*, PageID. 5–6.) Plaintiff "appealed the misconduct finding to the Deputy Warden's office," and non-party Assistant Deputy Warden Cline removed the "code 049 contraband" charge that had been added to the original charge, concluding that "it did not apply;" however, the original charge remained. (*Id.*, PageID.6.) Subsequently, Plaintiff received a 60-day restriction on his participation in the hobbycraft program, and his hobbycraft materials were confiscated and sent home. (*See id.*, PageID.7–8.)

Plaintiff's receipt of the initial misconduct conviction for violation of a posted rule constitutes an adverse action, and the Court assumes, without deciding, that the addition of the contraband charge to the original posted rules charge constitutes an adverse action. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"). Additionally, the Court assumes, without deciding, that Plaintiff's subsequent 60-day restriction on his participation in the hobbycraft program and the confiscation of his hobbycraft materials constitute adverse actions.

### 3.    Retaliatory Motive

To satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct. As explained below, in this action, although Plaintiff alleges the ultimate fact of retaliation, he alleges insufficient facts from which to reasonably infer that Defendants were motivated by any protected conduct.

11

### a. Claims Premised on the Filing of Grievances

First, with respect to Plaintiff's allegation that Defendants took adverse action against him because he filed grievances, Plaintiff fails to allege any facts to suggest that he filed grievances *prior to* the alleged adverse actions. Thus, Plaintiff necessarily fails to show that Defendants were motivated by his filing of grievances when they took the adverse actions against him.

Specifically, Plaintiff alleges in a conclusory manner that he submitted "grievances against prison officials for their wrong doings," however, in the complaint, Plaintiff alleges no facts about when he in fact filed the grievances. (Compl., ECF No. 1, PageID.9.) The only information regarding the timing of Plaintiff's grievances appears in copies of several grievances dated September 25, 2024, which Plaintiff attached to his complaint. (ECF No. 1-1, PageID.16, 19.) As to the events that occurred after September 25, 2024, the date on which Plaintiff engaged in protected conduct by filing grievances, the only event that occurred after this date is Plaintiff's meeting with Defendant Bobay on October 9, 2024, which was held to finalize the mailing out of Plaintiff's hobbycraft materials. (Compl., ECF No. 1, PageID.8.) Although Plaintiff's October 9, 2024, meeting with Defendant Bobay occurred after Plaintiff filed grievances on September 25, 2024, Plaintiff's factual allegations show that Defendant Ader determined that the confiscated hobbycraft materials would have to be sent home during a hearing on August 15, 2024, well before Plaintiff filed his grievances. (*See id.*, PageID.7.) Plaintiff claims that during the October 9, 2024, meeting, he tried to explain to Defendant Bobay that he "was only found guilty of code 049 – violation of a posted rule and not code 049 violation of contraband"; however, Plaintiff alleges no facts to suggest that Defendant Bobay himself could have prevented the mailing out of the hobbycraft materials at that point. Therefore, because the decision to mail out Plaintiff's hobbycraft materials was made prior to Plaintiff's filing of grievances on September 25, 2024, Plaintiff necessarily fails to show that Defendants were motivated by Plaintiff's filing of

grievances when they determined that Plaintiff's hobbycraft materials would be confiscated and sent home. The fact that the meeting with Defendant Bobay to finalize the mailing out of the confiscated materials occurred after Plaintiff filed his grievances does not change the analysis because this meeting was to finalize a determination that had been made before Plaintiff filed his grievances. Moreover, even setting this aside, Plaintiff alleges no facts to suggest that Defendant Bobay knew that Plaintiff had filed the grievances on September 25, 2024.

Accordingly, for these reasons, Plaintiff's First Amendment retaliation claims premised on his filing of grievances will be dismissed for failure to state a claim.

### b.    Claims Premised on the Potential Filing of a Lawsuit

Second, as to Plaintiff's allegation that Defendants took adverse action against him because of the potential that Plaintiff might file a lawsuit against them, the factual allegations in the complaint show that the discussion regarding the possibility of a future lawsuit occurred *after* the alleged adverse actions by Defendants. Plaintiff, therefore, fails to show that Defendants were motivated by the discussion of a potential, future lawsuit when they took the alleged adverse actions against him.

Specifically, as relevant to Plaintiff's claims premised on the discussion regarding the potential, future lawsuit, at the October 9, 2024, meeting with Defendant Bobay to finalize the mailing out of Plaintiff's confiscated hobbycraft materials, Defendant Bobay stated: "I already know you are going to sue me, but as it stands right now, you have to send the property out or it will be destroyed. I already know you are making spud so you have to do what you have to do." (*Id.*, PageID.8.) Although Defendant Bobay referenced future, potential protected conduct by Plaintiff, Plaintiff had not in fact engaged in this protected conduct at the time of the October 9, 2024, meeting.

Moreover, based on the factual allegations in the complaint, the purpose of the October 9, 2024, meeting between Plaintiff and Defendant Bobay was to finalize the previously made decision that the hobbycraft materials had to be mailed out. Specifically, Plaintiff first received a NOI regarding the restriction on his participation in the hobbycraft program and the confiscation of his hobbycraft materials on July 31, 2024, and then an administrative hearing was held on August 15, 2024, regarding this matter. At the August 15, 2024, hearing, Defendant Ader determined that the confiscated hobbycraft materials would be mailed out. These determinations were made prior to Defendant Bobay's statement regarding Plaintiff filing a potential, future lawsuit. Therefore, Plaintiff fails to show that Defendants' adverse actions were motivated by the potential filing of a future lawsuit because the alleged adverse actions occurred prior to any discussion regarding a potential, future lawsuit.

### c.    Claims Premised on Plaintiff's Challenge to the Initial Misconduct Conviction

Finally, as to Plaintiff's allegation that the 60-day hobbycraft program restriction was imposed, and his hobbycraft materials were confiscated, because Plaintiff challenged the initial misconduct conviction for violation of a posted rule and the alleged improper addition of a misconduct charge for possession of contraband, as explained below, Plaintiff fails to allege sufficient facts to show that Defendants acted with a retaliatory motive when they imposed the hobbycraft restrictions.

As relevant to this claim, Plaintiff alleges that on July 31, 2024, Defendant Poynter "read a Notice of Intent (NOI) to conduct an administrative hearing applying [Policy Directive] 05.03.102(Z) . . . ." (*Id.*, PageID.6.) MDOC Policy Directive 05.03.102(Z) provides for a 60-day termination from the hobbycraft program "if [a] prisoner is found guilty of misconduct . . . for

behavior which is determined to be directly related to his/her participation in a hobbycraft program." MDOC Policy Directive 05.03.102(Z) (eff. Oct. 1, 2006).

Plaintiff's own allegations show that he was convicted of violation of a posted rule for being in the recreation area with his hobbycraft items. (*See id.*, PageID.5 (alleging that "rule #5 of the Rec Area states: 'Possession of store items and/or personal items in the Rec area is prohibited'" (*Id.*, PageID.5.) Subsequently, Plaintiff received the NOI informing him that he faced a 60-day restriction on his participation in the hobbycraft program and the confiscation of his hobbycraft materials pursuant to MDOC Policy Directive 05.03.102(Z). (*Id.*, PageID.6.) Plaintiff characterizes this as Defendant Poynter "us[ing] the same incident which had been reversed on rehearing . . . to charge Plaintiff with violating the same policy, but in a different section of the policy . . . and attaching a second contraband removal slip dated July 31." (*Id.*) However, Plaintiff's own allegations show that he was convicted of a misconduct charge that related to his participation in the hobbycraft program because his April 2024 misconduct conviction was for having hobbycraft materials in the recreation area, which was a violation of a posted rule. (*See id.*)

Although Plaintiff's allegations show that on May 2, 2024, and May 17, 2024, Plaintiff successfully challenged the alleged improper addition of a contraband charge to his initial misconduct conviction for violation of a posted rule, and that on July 31, 2024, Plaintiff received a NOI regarding the imposition of a restriction on his participation in the hobbycraft program and the confiscation of his hobbycraft materials, besides this temporal sequence of events, Plaintiff alleges no facts to suggest that Defendants were motivated by Plaintiff's challenge to his initial misconduct conviction when the NOI was issued on July 31, 2024.

Instead, Plaintiff's own allegations show that Plaintiff was convicted of a misconduct charge that related to his participation in the hobbycraft program (i.e., he was convicted of violation

of a posted rule because he improperly had hobbycraft materials in the recreation area). And, pursuant to MDOC policy, because this misconduct conviction related to Plaintiff's participation in the hobbycraft program, Plaintiff was subject to a restriction on his participation in the hobbycraft program and the confiscation of his hobbycraft materials. *See* MDOC Policy Directive 05.03.102(Z) (eff. Oct. 1, 2006).

Plaintiff alleges that when Defendant Poynter brought the NOI regarding the restriction on his participation in the hobbycraft program and the confiscation of his hobbycraft materials to Plaintiff on July 31, 2024, "Plaintiff attempted to explain to Defendant Poynter that he did not catch a ticket (misconduct report) directly related to hobbycraft, " and in response, Defendant Poynter stated, "Oh! I thought I read in the misconduct it was because of the hobbycra[f]t," telling Plaintiff to "take it up at the administrative hearing." (*Id.*, PageID.7.) This statement by Defendant Poynter does not suggest that Defendant Poynter's issuance of the NOI was motivated by Plaintiff's successful challenge to the alleged improper addition of a contraband charge to the initial misconduct conviction for violation of a posted rule. Indeed, although Plaintiff believes his misconduct conviction for violation of a posted rule was not "directly related to hobbycraft," the *facts* alleged in the complaint show that Plaintiff was in fact convicted of a misconduct charge that related to his participation in the hobbycraft program.

Further, Plaintiff claims that when he asked Defendant Ader how the 60-day hobbycraft restriction would be imposed and about the requirement that he had to mail out his hobbycraft materials, Defendant Ader stated "in a victory type voice" that it "wasn't his concern." (*Id.*, PageID.7–8.) Although using "a victory type voice" and saying it "wasn't [Ader's] concern" may be unprofessional, these allegations do not suggest that Defendant Ader's actions were motivated by Plaintiff's protected conduct.

16

In short, although the challenge to the initial misconduct (i.e., the protected conduct) preceded the imposition of the 60-day restriction on Plaintiff's participation in the hobbycraft program and the confiscation of his hobbycraft materials (i.e., the adverse actions), Plaintiff's own allegations show that there was another non-retaliatory reason for the subsequent adverse actions. That non-retaliatory reason was that MDOC policy provides that an inmate may face a restriction on his participation in the hobbycraft program and on his possession of hobbycraft materials when he is convicted of a misconduct charge related to his participation in the hobbycraft program. Here, Plaintiff was convicted of a misconduct charge that related to his participation in the hobbycraft program, and he then faced a restriction on his participation in the hobbycraft program and on his possession of hobbycraft materials pursuant to MDOC policy.

Although, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive,'" the Sixth Circuit, has been reluctant to find that temporal proximity between the protected conduct and an official's adverse conduct, standing alone, is sufficient to establish a retaliation claim. *Compare Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)), *and Briggs v. Westcomb*, No. 19-1837 (6th Cir. Mar. 10, 2020) (unpublished) (holding that allegations of temporal proximity were sufficient where the filing of retaliatory misconduct by correctional officers occurred six days after Plaintiff filed a grievance against a medical provider, but only one day after the provider learned of the grievance), *with Hill*, 630 F.3d at 476 (discussing that the Sixth Circuit has been reluctant to find that temporal proximity alone shows a retaliatory motive). Here, as detailed above, besides Plaintiff's conclusory assertion that Defendants retaliated against him because he challenged the initial misconduct conviction, Plaintiff alleges insufficient facts to show that the alleged adverse actions were in fact motivated

by Plaintiff's protected conduct. Under these circumstances, the suggestion of temporal proximity alone is insufficient to show a retaliatory motive. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987) ("[A]lleging merely the ultimate fact of retaliation is insufficient.").

Furthermore, Plaintiff's "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)). Therefore, assuming that Plaintiff alleged sufficient facts to show that he engaged in protected conduct and that Defendants' actions constituted adverse action, because Plaintiff fails to allege sufficient facts to show that Defendants were motivated by Plaintiff's protected conduct when they took the alleged adverse actions, Plaintiff fails to state a First Amendment retaliation claim against Defendants.

Accordingly, for all of the reasons set forth above, Plaintiff's First Amendment retaliation claims will be dismissed.

## B.    Eighth Amendment Claims

Plaintiff references alleged violations of his Eighth Amendment rights; however, when describing these violations, rather than describing instances when Defendants acted with deliberate indifference, he claims that Defendants' alleged retaliatory actions violated his Eighth Amendment rights. (*See, e.g.*, Compl., ECF No. 1, PageID.9.)

The Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with

"deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Here, Plaintiff claims that Defendants violated his Eighth Amendment rights by allegedly retaliating against him; however, Plaintiff's retaliation claims are properly addressed as claims brought under the First Amendment. And, besides Plaintiff's conclusory assertion that Defendants violated his Eighth Amendment rights, Plaintiff alleges no facts to suggest that Defendants knew of a substantial risk of harm to Plaintiff, let alone that they knew of such a risk and disregarded it. Under these circumstances, Plaintiff fails to state any Eighth Amendment claims against Defendants. Accordingly, Plaintiff's Eighth Amendment claims will be dismissed for failure to state a claim.

### C.    Fourteenth Amendment Claims

#### 1.    Procedural Due Process Claims

##### a.    Claims Regarding the Misconduct Charges

In this action, Plaintiff references being charged with, and convicted of, a class III misconduct charge. (*See, e.g.*, Compl., ECF No. 1, PageID.5 ("Plaintiff explained that he was only found guilty of code 049 – violation of a posted rule and not code 049 violation of contraband.")); (*see also id.*, PageID.7 ("Plaintiff mentioned that he was found guilty of the same violation by [Defendant] Bobay which was code 049 posted rule #5[,] a class-three misconduct report."));

19

MDOC Policy Directive 03.03.105, Attach. C (eff. June 17, 2024) (indicating that code "049" is for class III misconduct charges).

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

Here, Plaintiff was found guilty of a class III misconduct charge. (*See* Compl., ECF No. 1, PageID.5, 7.) In addition to this misconduct conviction, Plaintiff states that he received a 60-day restriction "under [Policy Directive] 05.03.102(Z)." (*Id.*, PageID.7.) MDOC Policy Directive 05.03.102(Z) provides for a 60-day termination from the hobbycraft program "if [a] prisoner is found guilty of misconduct . . . for behavior which is determined to be directly related to his/her participation in a hobbycraft program." MDOC Policy Directive 05.03.102(Z) (eff. Oct. 1, 2006). Further, in a grievance attached to his complaint, Plaintiff references receiving four days' loss of privileges for his misconduct conviction for violating a posted rule. (ECF No. 1-1, PageID.16.) Plaintiff claims that the imposition of his misconduct charge and the related sanctions violated his due process rights. (*See generally* Compl., ECF No. 1.)

However, Plaintiff does not allege that his misconduct conviction impacted the duration of his sentence, and he cannot allege that the sanctions he received for the class III misconduct conviction impacted the duration of his sentence because the sanctions available in the MDOC disciplinary scheme for class III misconduct charges do not affect the duration of an inmate's sentence.[3] The Sixth Circuit has routinely held that misconduct convictions that do not result in

---

[3] Even if Plaintiff had been convicted of a class I misconduct charge, he could not show that the misconduct conviction impacted the duration of his sentence. For crimes committed after April 1, 1987, Michigan prisoners earn "disciplinary credits" under a statute that abolished the former good-time system. Mich. Comp. Laws § 800.33(5). Here, Plaintiff was convicted of crimes that occurred on April 14, 1987. *See* MDOC Inmate Locator, https://mdocweb.state.mi.us/otis2/ otis2profile.aspx?mdocNumber=189714 (last visited May 22, 2025). In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the United States Court of Appeals for the Sixth Circuit examined Michigan statutory law as it relates to the creation and forfeiture of disciplinary credits for prisoners convicted of crimes occurring after April 1, 1987. The Sixth Circuit determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440. Building on this ruling, in *Nali v. Ekman*, the Sixth Circuit held that a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the length of confinement. 355 F. App'x 909, 912 (6th Cir. 2009); *accord Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Furthermore, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. Plaintiff alleges that he received four days' loss of privileges, a 60-day restriction on his participation in the hobbycraft program, and the confiscation of his hobbycraft materials; however, these sanctions do not constitute "atypical and significant hardships," as contemplated by *Sandin*. *Cf. Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs).

Therefore, Plaintiff fails to state a procedural due process claim regarding his misconduct conviction.

### b.    Claims Regarding the Confiscation of Plaintiff's Personal Property

Plaintiff alleges that Defendants violated his Fourteenth Amendment rights by confiscating his hobbycraft materials. (*See* Compl., ECF No. 1, Page.9.) The Court construes this allegation to raise procedural due process claims regarding the deprivation of Plaintiff's property. However, as explained below, these claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent

and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Here, Plaintiff fails to allege that his state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property.

Accordingly, Plaintiff fails to state a Fourteenth Amendment procedural due process claim regarding the deprivation of his property.

### 2.      Substantive Due Process Claims

Plaintiff alleges that Defendants' actions "constitute[d] a denial of fundamental due process of law," and the Court construes this allegation to raise a substantive due process claim. (Compl., ECF No. 1, PageID.10.)

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir.

2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

In this action, although Plaintiff alleges that Defendants acted improperly, the facts alleged in the complaint fall short of showing the sort of egregious conduct that would support a substantive due process claim. *Cf. Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988) (holding that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power"), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999) (en banc); *Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016).

Furthermore, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273–75 (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). For example, in this case, the First Amendment is the applicable constitutional protection for Plaintiff's retaliation claims, and the Equal Protection Clause of the Fourteenth Amendment is the applicable constitutional protection for Plaintiff's equal protection claims.

Accordingly, for these reasons, any intended Fourteenth Amendment substantive due process claims will be dismissed for failure to state a claim.

### 3. Equal Protection Claims

Plaintiff avers that Defendants violated his right to equal protection under the Fourteenth Amendment, alleging that "he is an African American prisoner who requires a 'walker,'" and that

"Defendants, who are all Caucasian officials, sought an opportunity to put Plaintiff in his place, i.e., []never challenge white people's authority." (Compl., ECF No. 1, PageID.4, 8.)

To state a violation of the Equal Protection Clause, an inmate must show that the defendants purposefully discriminated against him. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977). Such discriminatory purpose must be a motivating factor in the actions of the defendants. *Id.* at 265–66. "A plaintiff presenting a race-based equal protection claim can either present direct evidence of discrimination, or can establish a prima facie case of discrimination under the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) (citing *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008)).

Here, Plaintiff claims that he was discriminated against due to his race and his disability. (*See* Compl., ECF No. 1, PageID.3.) However, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. As to the alleged race-based discriminatory action, Plaintiff fails to allege sufficient facts to support a claim of intentional race discrimination by either direct or indirect evidence. *See Davis v. Prison Health Servs.*, 679 F.3d 433, 440 (6th Cir. 2012) (discussing the distinction between direct and indirect methods of proving discrimination). First, Plaintiff fails to allege any facts constituting direct evidence of discriminatory motive or purpose. *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 458 (6th Cir. 2011) ("[D]irect evidence of discrimination does not require a fact-finder to draw any inferences in order to conclude that the challenged . . . action was motivated at least in part by prejudice against members of the protected group." (quoting *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003))); *see also Tibbs v. Calvary United Methodist*

*Church*, 505 F. App'x 508, 512 (6th Cir. 2012) (discussing that "[d]irect evidence is composed of only the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor" (citation omitted)); *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 239 (6th Cir. 2005) ("Isolated and ambiguous comments are insufficient to support a finding of direct discrimination." (citation omitted)). Second, Plaintiff fails to allege a *prima facie* claim under the indirect, burden-shifting framework because he fails to allege that other inmates who were not members of the protected class were treated differently and were similarly situated in all relevant respects. *See Umani*, 432 F. App'x at 458.

To be a similarly situated, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the[] [decisionmaker's] treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). In this action, Plaintiff fails to allege any facts about comparative prisoners who were similarly situated in all relevant respects and treated differently. (*See generally* Compl., ECF No. 1.)

Indeed, besides Plaintiff's conclusory assertion that Defendants "sought an opportunity to put Plaintiff in his place, i.e., []never challenge white people's authority," Plaintiff's complaint contains no *facts* to support his race-based equal protection claim. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

Additionally, Plaintiff's disability-based equal protection claim also fails because he fails to allege any facts to show that any prisoners were similarly situated but treated differently. Likewise, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court would

reach the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no facts that plausibly show that he was treated differently than others who were similarly situated in all relevant respects.

Accordingly, for these reasons, Plaintiff's Fourteenth Amendment equal protection claims will be dismissed.

### D.    Section 1983 Claims Regarding Violation of MDOC Policy

Plaintiff alleges that Defendants violated MDOC policy. (*See, e.g.*, Compl., ECF No. 1, PageID.8 (alleging that Defendants "ignored the proper procedures set forth in MDOC's policies").)

Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Therefore, Plaintiff's assertion that Defendants violated MDOC policy fails to state a claim under § 1983.

Moreover, "[w]ithout a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001). Thus, Plaintiff's allegation that Defendants violated prison policy fails to raise a cognizable federal claim.

Accordingly, for the reasons set forth above, Plaintiff's § 1983 claims regarding the violation of MDOC policy will be dismissed.

27

### E.    Civil Conspiracy Claims Under 42 U.S.C. §§ 1983 and 1985

In Plaintiff's complaint, he references a civil conspiracy under 42 U.S.C. §§ 1983 and 1985; however, the complaint contains no further reference to these claims. (*See* Compl., ECF No. 1, PageID.5–6.)

To maintain a cause of action for conspiracy under 42 U.S.C. § 1985(3),[4] a plaintiff must show the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998). Moreover, a plaintiff must allege that there existed "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *See Kush v. Rutledge*, 460 U.S. 719, 726 (1983); *see also Collyer*, 98 F.3d at 233. Although Plaintiff baldly asserts that Defendants' alleged actions were motivated by Plaintiff's race, Plaintiff alleges *no facts* to support this conclusory assertion. (*See, e.g.*, Compl., ECF No. 1, PageID.8.) Plaintiff's conclusory assertion with no supporting facts is insufficient to state a claim upon which relief can be granted. Therefore, Plaintiff's § 1985 claims will be dismissed.

---

[4] Subsections (1) and (2) of § 1985 do not apply. Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties. *See* 42 U.S.C. § 1985(1). The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings. *See* 42 U.S.C. § 1985(2). In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights." *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

Further, as to Plaintiff's § 1983 civil conspiracy claims, a civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). And, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff alleges in a conclusory manner that Defendants "fashioned a plan or scheme to deprive Plaintiff of his constitutional rights to show him who [is] boss at LCF," however, Plaintiff fails to allege any facts to support his conclusory assertion. (Compl., ECF No. 1, PageID.8.) Instead, Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no *facts* that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only

compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Therefore, Plaintiff fails to state a civil conspiracy claim under § 1983 upon which relief may be granted.

Accordingly, for all of the reasons set forth above, Plaintiff's civil conspiracy claims under §§ 1983, and 1985 will be dismissed for failure to state a claim.

### F.    Double Jeopardy Claims

The Court construes Plaintiff's complaint to raise claims under the Double Jeopardy Clause of the Fifth Amendment. Specifically, Plaintiff alleges that with respect to his misconduct charges, he "was being punished twice for the same alleged violation and [he] was being punished three times." (Compl., ECF No. 1, PageID.7.)

However, "[e]very circuit court of appeals to consider" whether the Double Jeopardy Clause applies to prison disciplinary charges "has given the same answer: The Double Jeopardy Clause was not intended to inhibit prison discipline." *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008); *see Turner v. Johnson*, 46 F. Supp. 2d 655, 668 (S.D. Tex. 1999) ("[T]he Double Jeopardy Clause applies only to criminal or quasi-criminal proceedings, the imposition of multiple punishments—disciplinary segregation, loss of privileges, and forfeiture of good time credit—for the same act of misconduct does not give rise to double jeopardy concerns." (citing *Langton v. Berman*, 667 F.2d 231, 234 (1st Cir. 1981); *Dayutis v. Powell*, No. Civ. C–93–257–B, 1994 WL 258785, at *6 (D.N.H. May 2, 1994))).

Accordingly, an intended Double Jeopardy Clause claims will be dismissed for failure to state a claim.

### G.    State Law Claims

Plaintiff also alleges that Defendants violated state law. (*See* Compl., ECF No. 1, PageID.1, 10.) As discussed above, claims under § 1983 can only be brought for "deprivations of rights

30

secured by the Constitution and laws of the United States," *Lugar*, 457 U.S. at 924, and Plaintiff's assertion that Defendants violated state law fails to state a claim under § 1983.

Further, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)). Here, Plaintiff's federal claims against Defendants will be dismissed, and the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Therefore, Plaintiff's state law claims will be dismissed without prejudice.

## <u>Conclusion</u>

Having conducted the review required by the PLRA, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims will be dismissed without prejudice.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge*

*v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.


Dated:   June 17, 2025                              /s/ Ray Kent
                                                    Ray Kent
                                                    United States Magistrate Judge